## COOK *v.* NEILSON.

A tenant from quarter to quarter, who has held over, is not bound to give notice of his intention to quit at the end of the current quarter.

IN error from the District Court of Philadelphia.

*Jan.* 30.   Case stated in an action for use and occupation.

The tenancy was under the following agreement :—

"I have rented of D. Cook the house I now occupy, by the quarter, commencing on the 10th of September, 1842, at $200 per quarter.         R. P. NEILSON. Philadelphia, August 31, 1842."

The plaintiff gave defendant the following notice :—

"To R. NEILSON, Esq.                                          Sept. 24, 1844.
  Sir: The rent of the house you occupy will be $250 per quarter, commencing on the 10th December next.      Respectfully, &c.,            D. COOK."

On the 6th June, 1845, defendant quit possession and paid the rent falling due on the 10th June.   The action was for the succeeding quarter's rent—viz. from June 10 to Sept. 10.

The court below gave judgment for defendant.

*O. Thompson,* for plaintiff in error.—The tenancy from quarter to quarter is of course regulated in the same manner as from year to year.   Whether a tenant holding over for an indefinite period must give notice, is the only question.   That the law in England requires a notice, both from landlord and tenant, is apparent from every text-book and decided case: 1 Wm. Bl. 533 ; 2 Ib. 1224 ; 1 T. R. 162 ; 4 B. & Cr. 922.   Woodfall on L. & Ten. 250 ; Comy. on Ib. 285–8.   It is equally certain that in Pennsylvania there must be a notice by the landlord; 8 S. & R. 466 ; 4 Raw. 123–7 ; and in the former case it is said to be reciprocal.

*Guillou* and *Price,* contrà.—The letting was from quarter to quarter, until either party elected to determine it: Was the tenant bound to notify the landlord of his intention to elect ?   It is not within the contract, nor required by any statute, nor has any decision yet announced this to be an implied part of the contract, nor has it been so understood by the profession, and it is denied in 8 S. & R. 469.   The parties so understood it.   The landlord raised the rent without a full quarter's notice, and the tenant has quitted on the same notice.   The landlord, it is true, did not eject him by summary proceedings without three months' notice, but this is under the statute, giving the landlord a jury, &c.   But it is for him to contract for this privilege if he see fit.   No case has decided this in England, though there are loose *dicta,* and they

are founded on the statute 2 Geo. 2, giving double rent for holding over, 1 Wm. Bl. 533. This is a tenancy at will, determinable at the end of each quarter, 7 John. 4, and there was no need of a notice by either party: 1 Pick. 47; 1 John. 323; 1 W. & S. 90; 13 Mai. 209–14.

The court being equally divided, the judgment was affirmed.

## Brown *v.* Ridgway.

An order to quash a foreign attachment is not the subject of a writ of error: for the affidavits on which the order was made are not part of the record. And where an order is made on extrinsic evidence, the presumption is, that in a court of record all things were rightly done.

Error to the District Court of Philadelphia.

*Feb. 2.* A foreign attachment against the defendant having been executed, he moved to quash, on affidavits which were filed and brought up on writ of error to the judgment or order quashing the writ.

*Markland,* for the plaintiff in error.—A writ of error lies to all the courts of this commonwealth by statute, and particularly to the final judgment of the District Court, March 30, 1811, S. 3; and wherever the record is complete by final judgment, error lies: Co. Litt. 288 b. The judgment below disposed of the case, and was therefore final. If it be said that this court cannot look at the affidavits, then there is an apparent error, for there is a final judgment against the plaintiff, when, so far as the record shows, there was no ground for such judgment. In 13 S. & R. 194, there was a case like the present.

*Paul,* contrà, cited 1 Bin. 222, 2 Yeat. 162, 3 S. & R. 410; but the court said there could have been no question had the court dissolved the attachment, instead of quashing the writ. He then contended the distinction was immaterial.

*Reply.*—Had the court done that, the suit would have remained, though the goods were discharged; but here the suit itself is ended.

Per Curiam.—The true reason why error does not lie in foreign attachment, was given by Chief Justice Tilghman, in Lewis *v.* Wallick. A judgment against the defendant is only